## Burns et al. v. Citizens' Bank & Trust Company.

(Decided June 16, 1933.)

WILLIAM W. MEEKS, E. C. O'REAR and ALLEN PREWITT for appellants.

JOSEPH J. BRADLEY, JOHN YOUNG BROWN and RICHARD J. COLBERT for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Mary C. Burns and Floyd L. Burns, her husband, on April 8, 1926, executed to the Guaranty Bank & Trust Company of Lexington, Ky., their note for $3,-000, due twelve months after date, with interest from date, payable semiannually, and to secure the note they executed on that day a mortgage to the bank on certain real estate, the property of Mary C. Burns. The interest on the note was paid regularly until February 8,

1931. The Guaranty Bank & Trust Company was placed in the hands of the state banking commissioner, and on July 18, 1931, its assets were sold by him to the Citizens' Bank & Trust Company, which on December 30, 1931, brought this action against Mary C. Burns and her husband to recover judgment on the note and enforce the mortgage. By their answer, and proof taken in support of it, they set out these facts:

Floyd L. Burns was the guardian of Jesse Laughlin, an infant, whose estate consisted of a life estate in some thirteen pieces of real property in Lexington, chiefly tenement houses. These properties had run down and needed extensive repairs. Because of the nature of the title, a part of the property could not well be sold to raise money to repair the remainder. Floyd L. Burns was an engineer on the Chesapeake & Ohio Railway, and was away from his home much of the time. On April 8, 1926, in order to secure the necessary fund to render the property rentable, Mary C. Burns and her husband executed their note to the Guaranty Bank & Trust Company, secured by the mortgage, the bank being acquainted with the facts. Laughlin became of age in March, 1927; shortly thereafter he and Mrs. Burns and her daughter went down to the bank, and, as the defendants proved, he executed his note for $3,000 to Mrs. Burns, and she accepted it and assigned it to the bank, which accepted it in discharge of her $3,000 note and released her from all liability.

On the other hand, the officer of the bank, with whom this transaction occurred, says that they wanted to know from him if the bank could not take a mortgage on Laughlin's property and release the mortgage on her property, as the money had been borrowed for the purpose of paying the debts of Jesse Laughlin. He and the president of the bank both told her that it was impossible to release her from her mortgage and take a mortgage from Laughlin in her place, due to the fact that Laughlin did not have title to the property, and they could not release a secured note and take an unsecured note in its place. However, Mrs. Burns was anxious for something to be done in order to protect her in case anything should happen to Laughlin, and, in order to accomplish that purpose, Mr. King, the officer of the bank who had charge of the matter, suggested that Laughlin should execute a note in the sum of $3,-

000, payable to Mrs. Burns, in order that she could collect that amount from his estate in case of his death, and at their request he prepared a note for that sum and gave it to Mrs. Burns, and that this was the last that he ever saw of it. The bank officers all state that they never agreed to release the secured note which they held on Mrs. Burns.

On this proof the circuit court gave judgment in favor of the bank; Mrs. Burns and her husband appeal.

The case turns on the question of fact. If the proof for the bank is believed, the judgment below is proper. The settled rule of this court is not to disturb the judgment of the circuit court on the facts where it turns simply on the credibility of the witnesses, unless palpably against the evidence. There are a number of circumstances here sustaining the judgment. The bank held the $3,000 note, which was well secured and had given it no trouble. It is not usual for a bank to accept in lieu of such paper an unsecured note. Laughlin's note was in no wise secured. The bank had no claim against Laughlin. The money had been lent to Mrs. Burns. If Laughlin died in a few months his note might have been valueless as wholly unsecured. In addition to this Mrs. Burns went on paying the interest on her note and was credited by the interest thereon. She never complained that the credit was improperly given. Under the undisputed proof the banking commissioner had charge of affairs for a while and Mrs. Burns came in offering to pay as before the interest on her note. He told her he would have to collect the note and could not take the interest as tendered; that he did not have any authority to take a renewal or grant an extension of time. She did not say anything to him about not owing the note or about it having been released. Other like facts appear in the record, and the chancellor's judgment on the proof cannot be disturbed.

Judgment affirmed.